UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Darren K. McAdams,

                Plaintiff,

                                  Civ. No. 04-108 (RHK/JSM)
                                  **MEMORANDUM OPINION**
                                  **AND ORDER**

v.

Michael Chertoff,[1] Secretary,
Department of Homeland Security
Agency,

                Defendant.

---

Gregg M. Corwin and Jennifer J. Duchscherer, Gregg M. Corwin & Associates Law Office, PC, St. Louis Park, Minnesota, for Plaintiff.

Friedrich A. P. Siekert, Assistant United States Attorney, Minneapolis, Minnesota, for Defendant.

---

**Introduction**

This is an employment discrimination case. Plaintiff Darren McAdams works for Defendant Department of Homeland Security (the "Government"). He alleges that he was denied a promotion on the basis of his race and asserts claims of disparate treatment and disparate impact under Title VII of the Civil Rights Act. The Government has moved for summary judgment on both claims. For the reasons set forth below, the Court will

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court substitutes Michael Chertoff for former Secretary Tom Ridge.

grant the Government's motion in part and deny it in part. McAdams's disparate treatment claim will proceed to trial while his disparate impact claim will be dismissed.

**Background**

McAdams, an African-American, has been employed by the Immigration and Naturalization Service ("INS") and Department of Homeland Security since 1995. Prior to joining the INS, McAdams was in the United States Navy for nine years. (See AR 187-89.)[2] His Navy experience included training in investigation and interrogation techniques, patrolling and securing crime scenes, and handling small arms. (See AR 187.) In addition, he received Auxiliary Security Force Training and training for an Anti-Terrorism Reaction Team. (See id.) Upon an honorable discharge in 1993, he was granted a ten-point disability status, which made him eligible for a Veterans Readjustment Act ("VRA") appointment. (See AR 71, 190-91; McAdams Aff. ¶ 2.) The VRA is a special authority by which federal agencies can appoint eligible veterans to vacant positions without competition.[3] (AR 71.) Use of this authority is discretionary. (Id.)

In 1995, McAdams began working for the INS as a Supply Technician at the National Hiring Center at Fort Snelling, Minnesota. (See AR 117, 186.) His duties as a Supply Technician consisted primarily of maintaining motor vehicles for the INS. (See AR 186.)

---

[2] All references to "AR" refer to the Administrative Record.

[3] McAdams's VRA certification expired in April 2003. (AR 71.)

In 1997, McAdams was promoted to Immigration Inspector for the INS at the Minneapolis-St. Paul International Airport.  (See AR 186; McAdams Aff. ¶ 1.)  His duties as an Immigration Inspector included determining the admissibility of persons seeking entry to the United States, investigating applicants' citizenship and purpose of travel, gathering intelligence information and reporting to other government agencies, and enforcing immigration laws.[4]  (See AR 186.)

In November 2000, McAdams applied for a promotion to Deportation Officer in response to a job positing in a VRA Program Bulletin.  (See AR 177-85 (the Bulletin), 186-91 (McAdams's application).)  A Deportation Officer removes people who have been ordered deported or are otherwise required to depart from the United States.  (AR 178.)  Deportation Officers must monitor deportation proceedings from initiation to conclusion, and act as liaisons with foreign consulates and embassies to facilitate the issuance of passports and travel documents required for deportation.  (AR 178-79.)

The VRA Bulletin listed the "Qualification Requirements" for a Deportation Officer as follows:

> Applicants must have three years of progressively responsible experience which demonstrates the ability to (1) analyze problems, to identify significant factors, gather pertinent data, and recognize solutions; (2) plan and organize work; and (3) communicate effectively orally and in writing. Such experience may have been gained in administrative, professional, technical, investigative or other responsible work.  Experience in

---

[4] McAdams is currently employed in the same position, but his employer is now the Department of Homeland Security and his title is Customs and Border Protection Officer.  (McAdams Aff. ¶ 1.)

3

substantive and relevant secretarial, clerical or other responsible work may be qualifying as long as it provided evidence of the knowledge, skills and abilities to perform duties of the position. Experience of a general clerical nature (typing, filing, routine procedural processing, maintaining records, etc.) is not qualifying.

-or-

Possess four years of study leading to a bachelor's degree in any field from an accredited college or university.

-or-

Possess a combination of qualifying periods of experience and education to meet the three years of experience requirement. In reviewing transcripts, education will be prorated based upon the following scale: 45 quarter or 30 semester hours equals 9 months of experience.

(AR 179.) In addition, the Bulletin listed the "Special Requirements for All Applicants" as, among other things, United States citizenship, driver's license, and no convictions for a misdemeanor crime of domestic violence. (AR 179-80.)

On his application, McAdams listed his work experience as consisting of nearly two years as a Supply Technician and three-and-a-half years as an Immigration Inspector. (AR 186.) He listed his other qualifications as, among other things, his nine years in the Navy, graduation from the Immigration Officer Academy, and "IOA Language Training" in Spanish. (AR 187.) He was interested in both term and full-time Deportation Officer positions in the St. Paul District, which is comprised of Minnesota, North Dakota, and Winnipeg, Manitoba, Canada.[5] (McAdams Aff. ¶¶ 3, 14.) At the time of his application,

---

[5] McAdams states in his Affidavit that the St. Paul District is comprised of Minnesota, North Dakota, and Winnipeg. The Government does not dispute McAdams, but it appears from the VRA Bulletin that the St. Paul District is actually comprised of Minnesota, North Dakota, and South Dakota. (See AR 183.)

he did not know of any vacancies; knowledge of vacancies at the INS came from word-of-mouth through co-workers or supervisors. (Id. ¶ 3.)

INS Deputy District Director Dean Hove, a Caucasian, was responsible for selecting the new Deportation Officers. (AR 132-33.) He did not select McAdams for either an available term or full-time position, although he felt that McAdams was a "good candidate." (AR 134.) McAdams did not receive any written notification that he was not selected, despite the fact that the Merit Selection Program in the INS Hiring Handbook states that "unsuccessful candidates should be notified, in writing, as soon as possible after the acceptance of the position by the selectee." (McAdams Aff. ¶ 3.)

For the term position, Hove selected Shane Conroy, a Caucasian. (AR 133.) In his opinion, Conroy was "clearly above everyone" because of his work experience and Spanish speaking skills. (AR 134.) With regard to work experience, Conroy had worked three years as a Customs Service Inspector in North Dakota, where he was responsible for inspecting vehicles at the Canadian border, and two years as an INS Enforcement Agent in Los Angeles, where he was responsible for investigating, arresting, and deporting criminal aliens. (AR 146.) With regard to his language skills, Conroy put on his application that he completed a "FLETC Spanish Program" and "[u]sed Spanish language on a daily basis while working for" the INS. (AR 147.) Hove stated that, "if I recall correctly, Conroy worked in the Los Angeles jails and had good Spanish speaking skills. I do not think Mr. McAdams had as good Spanish speaking skills." (AR 134.)

For the permanent position, Hove selected Jim Grizzell, a Caucasian. (AR 135.) In his opinion, Grizzell was the "best applicant" based on the recommendation of Bruce Norum, a Deportation Officer and Acting Assistant District Director for Deportation, and because of Grizzell's prior work and law enforcement experience and Spanish speaking skills (Id.) With regard to prior work and law enforcement experience, Grizzell had worked four-and-a-half years as an Immigration Inspector in Calexico, California and sixteen years as a Law Enforcement Park Ranger in national parks around the country. (AR 156.) With regard to his language skills, Grizzell wrote in his application that he used "the Spanish language at a highly proficient level." (AR 162.)

After his non-selection for the Deportation Officer positions, McAdams filed a complaint with an INS Equal Opportunity Counselor. (McAdams Dep. Tr. Ex. 3.) Thereafter, he filed a Complaint of Discrimination alleging race discrimination with the Department of Justice's Equal Employment Officer ("EEO"). (Id.) The EEO conducted an investigation and determined that no discrimination had occurred. (McAdams Dep. Tr. Ex. 6; AR 10-20.) McAdams appealed that decision to the Equal Employment Opportunity Commission ("EEOC"), which affirmed the EEO's decision in November 2003. (McAdams Dep. Tr. Ex. 7.)

During the EEO investigation, McAdams submitted statistical information in support of his discrimination claim. These statistics showed that in April 2001, the time frame when McAdams, Conroy, and Grizzell were being considered for the Deportation Officer positions, in the St. Paul District: (1) five out of 224 employees (2%) were

African-American[6]; (2) of five Deportation Officers, there were no African-Americans[7]; (3) no African-Americans were above the GS-9 pay level[8]; (4) no African-Americans were in law enforcement positions above the GS-7 pay level; and (5) Hove, who chose not to select McAdams, made six hiring decisions between April 1999 and April 2001 and selected no African-Americans.[9]  (See AR 175, 192, 194.)  McAdams also submitted Census Bureau statistics showing that African-Americans made up 3.5% of the Minnesota population in 2000.[10]  (McAdams Aff. ¶ 14.)

On January 14, 2005, McAdams filed the instant Complaint alleging claims of disparate treatment and disparate impact in violation of Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e-16(a) and 2000e-2.  The Government's summary judgment motion followed.

**Standard of Review**

---

[6] Of the 224 employees in the St. Paul District, there were five African-Americans (2%), six "Others" (3%), thirteen Hispanics (6%), and 200 Caucasians (89%).  (AR 194.)

[7] Of the five Deportation Officers in the St. Paul District, there were four Caucasians and one Hispanic.  (AR 192.)

[8] Of the five African-Americans in the St. Paul District, three were at GS-9, one was at GS-8, and one was at GS-7.  (AR 194.)

[9] Of the six hiring selections, Hove selected one Hispanic and five Caucasians. (AR 175.)

[10] After McAdams filed his Charge of Discrimination, the St. Paul District hired a female African-American as District Director, a female Caucasian as a term Deportation Officer, and promoted an Asian-American two levels.  (McAdams Aff. ¶ 15.)

7

Summary judgment is proper if, drawing all reasonable inferences favorable to the nonmoving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986). The moving party bears the burden of showing that the material facts in the case are undisputed. See Celotex, 477 U.S. at 322; Mems v. City of St. Paul, Dep't of Fire & Safety Servs., 224 F.3d 735, 738 (8th Cir. 2000). The court must view the evidence, and the inferences that may be reasonably drawn from it, in the light most favorable to the nonmoving party. See Graves v. Arkansas Dep't of Fin. & Admin., 229 F.3d 721, 723 (8th Cir. 2000); Calvit v. Minneapolis Pub. Schs., 122 F.3d 1112, 1116 (8th Cir. 1997). The nonmoving party may not rest on mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue for trial. See Anderson, 477 U.S. at 256; Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

**Analysis**

**A.   Disparate Treatment**

McAdams alleges that he suffered disparate treatment when he was not promoted to Deportation Officer. (Mem. in Opp'n at 9.) Under Title VII, all personnel actions affecting employees of federal agencies "shall be made free from any discrimination based on race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-16(a). Because McAdams has not put forth direct evidence of discrimination, his disparate treatment

8

claim is analyzed under the burden-shifting framework as set forth in McDonnell Douglas and its progeny. See, e.g., Kratzer v. Rockwell Collings, Inc., 398 F.3d 1040, 1046 (8th Cir. 2005).

Under this framework, McAdams has the initial burden of establishing a prima facie case of discrimination. See id. The prima facie case raises a legal presumption of discrimination in the plaintiff's favor, requiring the defendant to articulate a legitimate, nondiscriminatory reason for its decision. See Tex Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253-54 (1981). If McAdams makes a prima facie showing, the Government must proffer a legitimate, nondiscriminatory reason for the adverse action. See Kratzer, 398 F.3d at 1046. If the Government meets its burden, McAdams must establish that the Government's proffered reason is pretextual and that intentional discrimination was the true reason for its actions. See id. The ultimate burden of proving discrimination remains with McAdams at all times. See Burdine, 450 U.S. at 253.

    **1.**    **Prima Facie Case**

To establish a prima facie case of discrimination in a failure-to-promote case, McAdams must show (1) membership in a protected group; (2) qualification and application for an available position; (3) rejection; and (4) promotion of an employee similarly situated but not part of a protected group. Kratzer, 398 F.3d at 1046. The Government attacks only the fourth element, arguing that McAdams cannot show that he was similarly situated to Conroy or Grizzell. (Mem. in Supp. at 6-7.) The Court disagrees. At this stage, McAdams's burden to show that he is similarly situated is "not

9

onerous." Peterson v. Scott County, 406 F.3d 515, 522 (8th Cir. 2005) (quoting Wheeler v. Aventis Pharm., 360 F.3d 853, 857 (8th Cir. 2004)). The record shows that McAdams was considered a "good candidate" by Hove, the selecting official. (AR 134). For the purposes of establishing a prima facie case, McAdams has shown he was similarly situated. See id. at 522-23 (finding applicants similarly situated when all were "viable candidates"); Ottman v. City of Independence, Mo., 341 F.3d 751, 757 (8th Cir. 2003) (finding candidates similarly situated where both met the minimum qualification for the position).

### 2.     Legitimate, Nondiscriminatory Reason

The burden now shifts to the Government to articulate a legitimate, nondiscriminatory reason for its decision not to promote McAdams. "This is a burden of production, not proof. The defendant need not persuade the court, it must simply provide evidence sufficient to sustain a judgment in its favor." Kratzer, 398 F.3d at 1046 (citation and internal quotation omitted). The Government contends that Conroy and Grizzell were selected because they were better qualified for the position. (Mem. in Supp. at 7.) With respect to Conroy, the Government points out that he was considered by Hove as "clearly above everyone" because of his five years experience as a Customs Service Inspector and INS Enforcement Agent and because of his "good Spanish speaking skills" in comparison to McAdams.[11] (See AR 134.) With respect to Grizzell, the Government

---

[11] The Government argues that Conroy was better qualified because he had a college degree. (Mem. in Supp. at 7-8.) While it appears that Conroy possessed a college

notes he was considered by Hove to be the "best applicant" based on the recommendation of Norum, Grizzell's twenty-and-a-half years experience as a Immigration Inspector and Law Enforcement Park Ranger, and his Spanish language skills.[12]  (See AR 135.)  The Court finds that the Government has met its burden at this stage.  Selecting applicants for promotion because they were more highly qualified is a legitimate, nondiscriminatory reason for the decision.  See Pierce v. Marsh, 859 F.2d 601, 603 (8th Cir. 1988).

---

degree, Hove, at least on the record before the Court, did not state in his affidavit that the college degree played a role in his decision.  (See AR 132-36.)

[12] Again, the Government argues that Grizzell was better qualified because he had a college degree.  (Mem. in Supp. at 7-8.)  While it appears that Norum made his recommendation to Hove based in part on Grizzell's college degree (see AR 129), Hove did not state in his affidavit that the college degree played a role in his decision.  (See AR 132-36.)

11

### 3.     Pretext and Intentional Discrimination

Because the Government has offered a legitimate, nondiscriminatory reason for its decision, McAdams must present evidence showing that the Government's reason is pretextual and that intentional discrimination was the real reason.  At this stage of the analysis, McAdams "can avoid summary judgment only if the evidence considered in its entirety (1) creates a fact issue as to whether the employer's proffered reasons are pretextual and (2) creates a reasonable inference that [race] was a determinative factor in the adverse employment decision."  Rothmeier v. Investment Advisors, Inc., 85 F.3d 1328, 1336-37 (8th Cir. 1996).

McAdams argues he has created a fact issue as to whether Hove's reasons for choosing Conroy and Grizzell—more work experience and better Spanish speaking skills—are pretexts.  (See Mem. in Opp'n at 15-18.)  On the record before it, the Court agrees.  First, with regard to work experience, McAdams asserts that Hove disregarded his nine years in the Navy in which he had law enforcement training.  (See id. at 12, 16-17.)  The record shows that, when considering his military duty, McAdams had more work experience (twelve-and-a-half years) than Conroy (five years), but less than Grizzell (twenty-and-a-half years).  Evidence that an employer promoted a less-qualified candidate can support a finding that the employer's nondiscriminatory reasons for the promotion were pretextual.  See Duffy v. Wolle, 123 F.3d 1026, 1037-38 (8th Cir. 1997).  While courts do not review the wisdom or fairness of employers' business judgments, other than to determine whether they involve intentional discrimination, courts may

consider whether an employer hired or promoted an individual who was substantially less qualified than an unsuccessful candidate in the protected class. See Peterson, 406 F.3d at 523. Evidence that Conroy had less than half the years of experience as McAdams could permit a jury to determine that the Government's stated reason for Conroy's promotion is not worthy of belief.

Second, with regard to Spanish speaking skills, McAdams asserts that Hove had no actual knowledge of any of the applicant's capabilities. (See Mem. in Opp'n at 12, 17.) Instead, he contends that Hove assumed that his Spanish skills were not as good as Conroy's and Grizzell's skills. (Id. at 17; see AR 134-35.) The record shows that, on their respective applications, McAdams wrote that he had "IOA Language Training" in Spanish, Conroy wrote that he completed the "FLETC Spanish Program" and "[u]sed Spanish language on a daily basis," and Grizzell wrote that he used "the Spanish language at a highly proficient level." (AR 147, 162, 187.) There is no indication that Hove interviewed any of the applicants and the applications provide little indication of whose language skills were superior. Evidence that an employer's characterizations of an employee's deficiencies was "carelessly inaccurate" or, worse, "willfully exaggerated," can support a finding of pretext. See Young v. Warner-Jenkinson Co., 152 F.3d 1018, 1023 (8th Cir. 1998). Here, evidence that Hove mischaracterized McAdams's deficiencies regarding his Spanish speaking skills could permit a jury to determine that the Government's stated reason for his promotion is not worthy of belief.

Ordinarily, having created a fact issue as to whether the Government's proffered reasons are pretextual, McAdams would have to offer evidence that creates a reasonable inference that race was a determinative factor in the adverse employment decision. Rothmeier, 85 F.3d at 1336-37.  In some situations, however, "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated."  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 148 (2000).  In other words, "it is permissible for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation."  Id. at 147 (emphasis in original).

The Court finds that given McAdams's prima facie case and the evidence from which a jury could find that the Government's asserted justification is false, a jury could conclude that the Government unlawfully discriminated.  See id. at 147-48.  In this case, "the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose.  Such an inference is consistent with the general principle of evidence law that the factfinder is entitled to consider a party's dishonesty about a material fact as affirmative evidence of guilt."  Id. at 147 (citations and internal quotations omitted).  Whether the Government intentionally discriminated is therefore a matter to be decided at trial.[13]  See Buettner v. Arch Coal Sales Co., 216 F.3d

---

[13] While the Court finds that a jury could find intentional discrimination on the current record, the facts may develop differently at trial.  Thus, nothing in this

707, 717 (8th Cir. 2000) ("For a plaintiff to survive summary judgment, [he] must adduce enough admissible evidence to raise genuine doubt as to the legitimacy of a defendant's motives, even if that evidence does not directly contradict or disprove a defendant's articulated reasons for its actions.")  Accordingly, the Government's Motion for Summary Judgment on McAdams's disparate treatment claim will be denied.[14]

### B.    Disparate Impact

McAdams also alleges that the Government's hiring practice is subjective and has created a disparate impact upon African-Americans.  (See Mem. in Opp'n at 21.)  Disparate impact claims under Title VII challenge employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity.  Hanzen Paper Co. v. Biggins, 507 U.S. 604, 609 (1993).  To prove discrimination under this theory, McAdams must (1) identify a facially neutral employment practice, (2) demonstrate a disparate impact upon the group to which he belongs, and (3) show a causal connection between

---

Memorandum Opinion and Order prevents the Government from making a Rule 50(a) motion for judgment as a matter of law at trial.

[14] In addition to the evidence showing that the Government's reasons were pretextual, McAdams has offered statistical data in support of his disparate treatment claim.  (See Mem. in Opp'n at 19-21.)  His disparate treatment claim, however, survives summary judgment without reference to his statistical data.  The Court deliberately left out a discussion of this data because, as will be addressed below, the data is flawed and does not support either his disparate treatment or disparate impact claims.

the two.[15]  See Watson v. Fort Worth Bank & Trust, 487 U.S. 977, 994-95 (1988); Lewis v. Aerospace Community Credit Union, 114 F.3d 745, 750 (8th Cir. 1997); Pierce, 859 F.2d at 604.

McAdams has identified the Government's "completely subjective hiring practice" as the facially neutral employment practice which creates a disparate impact upon African Americans.  (See Mem. in Opp'n at 23.)  Subjective or discretionary employment practices may be analyzed under a disparate impact approach in appropriate cases.  See Watson, 487 U.S. at 991.  For the purposes of this Motion, the Court will assume that McAdams has met his burden on the first two prongs of his prima facie case.  Therefore, the issue is whether he has established a prima facie case of causation.

To establish a prima facie case of causation, McAdams "must offer statistical evidence of a kind and degree sufficient to show that the practice in question has caused the exclusion of applicants for jobs or promotions because of their membership in a protected group."  Watson, 487 U.S. at 994; see Evers v. Alliant Techsystems, Inc., 241 F.3d 948, 953 (8th Cir. 2001); Langlie v. Onan Corp., 192 F.3d 1137, 1140 (8th Cir. 1999); Lewis, 114 F.3d at 750.

---

[15] Contrary to the Government's contention, a disparate impact claim like the one alleged here does not require proof of intentional discrimination.  See Hanzen, 507 U.S. at 609; Watson v. Fort Worth Bank & Trust, 487 U.S. 977, 987 (1988); Evers v. Alliant Techsystems, Inc., 241 F.3d 948, 953 (8th Cir. 2001).  The Government's reliance on Lorance v. AT&T Technologies, Inc., 490 U.S. 900 (1989) is misplaced because that case dealt with alleged discriminatory seniority systems, which require a showing of discriminatory intent.  See Lorance, 490 U.S. at 904-05; Dodd v. Runyon, 114 F.3d 726, 730 (8th Cir. 1997); 42 U.S.C. § 2000e-2(h).

McAdams offers several statistics: in April 2001, in the St. Paul District: (1) five out of 224 employees (2%) were African-American; (2) of five Deportation Officers, there were no African-Americans; (3) no African-Americans were above the GS-9 pay level; (4) no African-Americans were in law enforcement positions above the GS-7 pay level; and (5) Hove, who chose not to select McAdams, made six hiring decisions between April 1999 and April 2001 and selected no African-Americans. (See Mem. in Opp'n at 25-26; AR 175, 192, 194.)

Where statistical data is relied upon, the "proper comparison [is] between the racial composition of [the at-issue jobs] and the racial composition of the <u>qualified</u> . . . <u>population</u> in the <u>relevant labor market</u>." <u>Wards Cove Packing Co. v. Atonio</u>, 490 U.S. 642, 650 (1989) (quoting <u>Hazelwood Sch. Dist. v. United States</u>, 433 U.S. 299, 308 (1977) (emphasis added, alterations in original). "It is such comparisons—between the racial composition of the qualified persons in the labor market and the persons holding at-issue jobs—that generally forms the proper basis for the initial inquiry in a disparate-impact case." <u>Id.</u>

As the Government points out, McAdams has not identified either the relevant labor market or the qualified African-American population in that market. For example, although McAdams asserts that, in April 2001, only five of 224 employees (2%) in the St. Paul District were African-Americans and that 3.5% of <u>Minnesota's</u> population was African-American, he has not identified the percentage of qualified African-Americans in the relevant labor market—which is the St. Paul District, including North Dakota and

17

Winnipeg.[16] For another example, although he identifies that no African-Americans were Deportation Officers, were above the GS-9 pay level, or were in law enforcement positions above the GS-7 pay level, McAdams has again failed to identify the number of qualified African-Americans in the relevant labor market. Finally, while Hove selected zero African-Americans in six employment decisions, McAdams has failed to show how many African-Americans (if any) applied, whether the applicants were qualified, and his sample size of six is too small to be statistically significant. See Mems, 224 F.3d at 740 (finding sample size of seven too small to be significant). "When special qualifications are required to fill particular jobs, comparisons to the general public (rather than to the smaller group of individuals who possess the necessary qualifications) may have little probative value." Hazelwood, 433 U.S. at 308 n.13; see Watson, 487 U.S. at 997.

McAdams argues that he cannot demonstrate the number of qualified African-American applicants who have been rejected because the Government has not sent out written notices to unsuccessful candidates, despite the fact that the INS Hiring Handbook states that "unsuccessful candidates should be notified, in writing, as soon as possible after the acceptance of the position by the selectee." (See Mem. in Opp'n at 24-25; McAdams Aff. ¶ 3.) But the Court is not convinced that this evidence would help in this case. First, this information would presumably only state the name of the unsuccessful applicant, not the applicant's race. Second, this information would not indicate whether

---

[16] Or South Dakota, if it is also part of the St. Paul District.

the decisionmaker knew the applicant's race when making his decision. Third, this information would presumably not state whether the applicant was minimally qualified. Fourth, assuming the above could be discerned, the most one could expect to learn from this information is the number of minimally qualified African-American applicants who applied and were rejected—it does not, however, provide any information on the number of qualified African-Americans in the St. Paul District. Simply put, even if McAdams had the information he says he needs, there would still be too many unanswered questions.[17]

In sum, McAdams has failed to establish a prima facie case of disparate impact discrimination. Given that he has not identified the relevant labor market and the qualified African-Americans in that market, his statistical evidence is not sufficient to establish that the Government's subjective hiring system caused the exclusion of applicants for jobs or promotions because of race. See Wards, 490 U.S. at 650; Watson,

---

[17] In addition, the Court has serious reservations as to the statistical significance of McAdams's numbers. While the Supreme Court has never adopted a rigid mathematical formula, its formulations "have consistently stressed that statistical disparities must be sufficiently substantial that they raise . . . an inference" that the practice in question causes the exclusion of protected applicants. Watson, 487 U.S. at 994-95 (citing cases) (emphasis added). To gauge the substantiality of the statistical disparities, courts have at times examined the "standard deviation" from the expected norm. See Watson, 487 U.S. at 995 n.3; Hazelwood, 433 U.S. at 311 n.17; Emanuel v. Marsh, 897 F.2d 1435, 1441 (8th Cir. 1990). However, given the flaws in McAdams's statistics, the Court need not analyze the standard deviations in this case.

487 U.S. at 994.  Accordingly, the Court will grant the Government's Motion and will dismiss McAdams's disparate impact claim.[18]

**Conclusion**

Based on the foregoing, and all of the files, records, and proceedings herein, **IT IS ORDERED** that the Government's Motion for Summary Judgment (Doc. No. 13) is **GRANTED IN PART** and **DENIED IN PART** so that Plaintiff's <u>disparate treatment</u> claim will proceed to trial, while Plaintiff's <u>disparate impact</u> claim is **DISMISSED WITH PREJUDICE**.


Dated: July 11, 2005                                            s/Richard H. Kyle
                                                                RICHARD H. KYLE
                                                                United States District Judge

---

[18] To the extent McAdams raises a pattern or practice discrimination claim, that claim fails for the same reasons.  He has not shown relevant statistical disparities to permit an inference of discrimination.  See <u>Morgan v. United Parcel Serv.</u>, 380 F.3d 459, 463-65 (8th Cir. 2004).